Case number 20-3028 et al. United States of America versus Nizar Trabelsi, also known as Nizar Ben Abdelaziz Trabelsi, also known as Abu Kaka Appellant. Ms. Goetzel for the appellant, Mr. Smith for the appellee. Good morning, Ms. Goetzel. We'll hear from you. Good morning, Judge Wilkins. May it please the court, Celia Goetzel for Appellant Nizar Trabelsi, and I would like to reserve two minutes for rebuttal. Since the court heard this case in 2017, U.S. authorities have ignored the Kingdom of Belgium's official, united, uncontested position, as relayed through its Ministry of Justice, that one, counts one and two of the U.S. indictment may violate Article V of the treaty, and two, regardless, under the terms of this bilateral treaty, under uncontested Belgian law, and under Belgium's grant of extradition, specifically in this case, Mr. Trabelsi cannot be prosecuted for overt Acts 23-26, specifically the conspiracy to bomb the Klein Bruegel base. U.S. prosecutors have portrayed for the lower courts, and for this court, a foreign separation of powers issue that simply does not exist in Belgium, and somehow convinced the lower courts to ignore Belgium's official interpretation of a bilateral treaty, completely disregard the ministry's official acts, recognizing the supremacy of its judiciary. Ms. Goetzel, can you be clear about the separation of powers issue? What are you saying that the U.S. is ignoring? What is the separation of powers question that you're identifying? So the U.S. has suggested that there is some sort of separation of powers issue in Belgium that the lower court should ignore, and that these, the U.S. courts should ignore, but what we're saying is there is no separation of powers issue. There is one united voice there. And by separation of powers, I guess I'm just asking, you're saying the purported difference between the court's view and the ministry's view. Is that what you're, is that what you mean by separation of powers? That's correct. The U.S. government in this case has portrayed that the minister's view of the grant of extradition, and that is simply not the case here. Suppose we don't agree with you, and we believe that the ministry does take a different view than the courts. Why shouldn't we view that the ministry's view, the executive's view prevails? The ministry has relayed the supremacy of the judiciary. So the ministry has adopted the judiciary's view in complying with the orders. You're fighting my hypothetical. My hypothetical is suppose we disagree with that argument, and we find that the ministry does not, is basically conveying what the court told it to convey, but not necessarily what it believes the proper interpretation of the treaty is. What do we do then? So that would, so two things. One, that is the interpretation of the treaty is separate from what the grant of extradition in this case permitted. So adherence to the order, the executor of the arrest warrant, and the ministry has never said that the, has never said that the executor wasn't part of the grant of extradition in this case. Secondly, I mean, this court, sister court, has spoken directly to it and said the district court of appeal for the district of Columbia interprets the ministerial order as authorizing extradition without the limits set during the executor of the arrest warrant. It doesn't say the ministry has interpreted its ministerial order as made a mistake about what it is that was actually granted. How do you square that position with the Russell Court of Appeals ruling in the context of the motion to enforce, in which it appears, and I'm looking at 2021, I believe, JA 2021, when it appears to recognize what this court has said and that there is some sort of distinction or conflict between what the court views and what the ministerial order says. I mean, it suggests very clearly that the DC circuit has given priority to the ministerial order and that its own decisions don't modify or cancel that order. So I'm not sure that I understand your view that there is a unified voice coming from Belgium as to what is happening. So first of all, I think that this citation on 2021, the court is referring to Judge Moss's lower court decision here, not the DC circuit's decision. Except it says the DC circuit in the very first sentence of the paragraph. You aforementioned American decisions and in particular that of the DC circuit currently before appeal, right? Yes. So what this is saying is that the courts recognize that there's a dissension, there's a difference in interpretation of how Article V of the treaty should be applied. So to the extent that there is a difference in decision of how the law is applied, that has been finally decided, that was finally decided in Belgium when the appeal was, the government's appeal of the August 2019 decision was dismissed. So as a legal matter, if the court here is looking to what is Belgian law, then it should look to the courts as to how to interpret Belgian law. If the court is looking to how to interpret the extradition treaty, the ministry has relayed through a March 5th note, a very clear prescription that Mr. Belzy cannot be tried here for overt acts 37, sorry, 23 through 26. And that the court should familiarize itself with the analysis in Belgium and at least consider that that is the law in Belgium. Ms. Gatzel, can I just ask you, you mentioned the dismissal of this decision or where is that? Is that somewhere in the record? So that is the, it's cited in a footnote in our briefs and the government has recognized it as well. It's the court of cassation decision. It's the last decision in the appendix at page 2200. And that occurred on March 4th of 2021. And are we just taking judicial notice of that or is it somewhere in the record? Yes, it is in the appendix and we've cited it. It is a decision of a foreign court that the court can take judicial notice of. It actually found no legal basis for the government's appeal of the August 8th decision. Ms. Gatzel, if I could just ask you some questions about subject matter jurisdiction here for the court. Our court in 2017 didn't reach the question of remedies. What would be the appropriate remedy if you were to prevail? But I'm wondering if there were a seems to me that the remedy in part may go to the question of subject matter jurisdiction because it's unclear to me. I mean, if we can't dismiss the indictment, then how does Mr. Trebalsi have redressability for his claims? So I'm wondering if you could address that question. So I'm a little unclear on your question in terms of a remedy. We are asking the court at a minimum to order that overt acts 23 through 26 be stricken from the indictment to give effect to the extradition order in this case so that he is not tried for crimes that he was already tried for in and can discharge Mr. Trebalsi under the Supreme Court case law about speciality. Isn't speciality a different type of concept? So even under the text of this particular treaty, the prior prosecution limit in Article 5 seems to run to the extraditing state, to Belgium, right? So once Mr. Trebalsi is extradited and he's now here in the United States, does he have an injury or claim against the U.S. government for a violation of Article 5? I mean, it doesn't seem that the United States is the cause of his harm in this instance, right? It's the Belgian government who has the treaty obligation, whereas for speciality, the U.S. government has an obligation. And those claims may well be cognizable, but it's not clear to me that he has a prior prosecution claim against the U.S. government or a non-bis claim against the U.S. government once he's already been extradited by Belgium. So he does because Article 5, both parties have contracted and Article 5 applies to both parties. And the harm here that must be redressed and the reason why this is here pre-trial is because the harm is in him being tried for offenses for which he has already been tried. So this court can stop that the violation of putting him in jeopardy twice for the same things that he was already tried for in Belgium by stopping this prosecution. Ms. Goetzel, are there any cases in U.S. courts in which such a claim has been successful? So where someone has already been extradited and there's a claim that they should not have been extradited under a non-bis or prior prosecution type of treaty obligation? Because I was not able to find any such case and I don't believe that Mr. Trabalsi cites any of those cases in his briefing. It seems that the nature of non-bis is that it runs against the extraditing state and there are a number of cases that suggest that is how that principle is understood. It runs for both countries in the treaty as written in the treaty. So extradition shall not be granted when the person sought has been found guilty convicted or acquitted in the requested state for the offense for which extradition. Sure, both countries have an obligation not to extradite people in violation of this principle. So if someone were in the United States and Belgium was seeking extradition to Belgium, the United States would have an obligation not to violate article 5 and a person about to be extradited perhaps would have the ability to challenge their extradition under article 5 before they were extradited. But it seems that this I mean this language I think pretty clearly runs against the extraditing you know the state that's been requested to extradite. Extradition shall not be granted. Here the state that extradited Mr. Trebalzi is telling U.S. authorities whoops like maybe we did maybe we shouldn't have extradited him. Well I want to I want to follow up on that point which is a sort of an extension of what Judge Rao just mentioned which is why is it then that we should now care about or give effect to a change. So assuming assuming that at the time the order was it was clear and there was dissension between the ministry of justice and the courts regarding whether or not this person should be extradited. We get the order the person is extradited under what circumstance can the ministry then change its mind about the extradition and have us give that effect in terms of striking the provisions or whatnot you're the remedy that you want us to apply. Why should we do that? I mean in general we believe in finality of ruling that new law doesn't necessarily redound to the benefit of a person who was previously considered under it. So I'm just not sure why it matters that they've now changed their mind according to you. So the ministry our position is not that the ministry has changed its mind. It hasn't changed its mind. Our position is that and it's pretty ambiguous the extradition order is ambiguous. Belgium thought clearly thought and that's apparent from this new decision that it was limiting the grant of extradition to exclude these acts that he had already been tried for in Belgium and the extradition order was somewhat ambiguous. It said that he was being extradited pursuant to the executor pursuing. Can I ask you if the order is ambiguous I'm not sure it necessarily means that we ask the court for the answer right? I mean you could imagine a world in which the because this is a political process I think you would concede that there seemed like there could be a number of options for construing an ambiguous extradition order one of which is we turn to the diplomats and we say can you please go ask the ministry what this means since it isn't clear. One I think could be figuring out what Belgian courts actually do in terms of their construction of ambiguous law. So if we were to you know apply Belgian law like what is their rule of construction when they confront ambiguous text or we could apply our own rules of construction as to how we address which I think is somewhat what Judge Moss did in this case we look at the text is it clear or whatnot right? So why are you suggesting we do get a fourth option which is just ask the Belgian courts how they would interpret this particular provision? So we're not saying that the treaty provision is ambiguous we're saying that the extradition order the fact of the grant of extradition so the 2011 ministerial order may have been and maybe it might have even been purposefully ambiguous but now we have a final interpretation of what that of the scope of the grant of extradition under the ministerial order. And that's coming from the courts or from the ministry? It's coming it is coming from both I mean the the March 5th note and all of the Belgian states pleadings in Belgium make clear that its judiciary is supreme that it it might have taken a different position in litigation which you know happens here all the time when the DOJ takes a different position in litigation. What about the position it took in the actual diplomatic notes that it sent when it was clarifying what the order meant that's not in litigation it sent a note didn't it the ministry? The ministry the note that it sent in 2019 in November of 2019 it has explained in official statements was simply meant to convey that it had appealed the differs in its interpretation of whether an offense-based or fact-based analysis should apply to article 5 of the treaty but that's not what we're saying here that the minister never questioned that the grant of extra the court's final determination that the grant of extradition does not allow Mr. Trabelsi to be prosecuted here for overt acts 23 through 26. Ms. Getzels, did the ministry ever explicitly state that in any communication to the United States that those overt acts were excluded? The ministry never explicitly stated that the overt acts were as facts or evidence that that can be used as evidence to prove the charges in the United States but the the ministry has has been ambiguous. It has never stated that he can be convicted here for the conspiracy to bomb Kleinbrogl or that the problem that I have though with all of this is you know we heard this case in 2017 and it seems to me that a procedure whereby once the extradition is granted and the person is sent here and the communications are made with the stipulations as to what the grounds will be for allowing the extradition but that should be the end of it. We're four years later and here we are trying to you know discern what these Belgian court decisions really mean and whether there's a real dispute between the executive and the judiciary about what they meant with the extradition order. I mean why should we at this point why should we really do anything other than just follow the law of the case doctrine and say this has been decided? I mean it's truly extraordinary that your sister court, the Brussels Court of Appeals, has said to you you misinterpreted the grant of extradition. You made a mistake the first time. That is significant and material cause to reopen the decision but also there is no dispute in Belgium that he cannot be convicted here that at a minimum overt acts 23 through 26 were excluded because the ministry never disavowed the executor the order of enforcement in in extraditing Mr. Trebalzi and the law also in Belgium is finally decided like there is it is clear under Belgian law that article 5 requires a fact-based analysis. It's 100 clear there is no other interpretation that can be made. The minister has relayed the court's final decision so to the extent that this court did not recognize that or fully consider the final law in Belgium when considering what deference it was giving to the Belgian extradition decision and to and in basically not engaging in an analysis of what article 5 means in deferring to what it thought was a reasonable interpretation what the Belgian government has now told you is that that was not Belgian law that was not a reasonable interpretation of the treaty under Belgian law. So if I could ask you a related question if do you think that Trebalzi decision in 2017 of this court do you think that it's jurisdictional holding is also is law of the case for us deciding this appeal? Yes there's been no question of jurisdiction in this case neither party has raised it so it hasn't and it hasn't well but jurisdiction is something we always have to consider to ensure that we have the authority to decide a case but do you think that the previous panel's decision about jurisdiction is law of the case? I understand you don't think that the merits are law of the case but do you think the jurisdictional holding is law of the case? So we don't first of all we don't think we think the merits and the jurisdiction are law of the case in the sense that the court said we defer to Belgium there's a presumption that the extradition order was proper unless there's some reason to rebut or think that it wasn't here we have rebutted that presumption so we're not challenging the law of the case we are presenting facts that should alter the court's application of that law to the facts of this case and in terms of jurisdiction I mean this is a was tried for in Belgium the harm is the trial we are pre-trial and so jurisdiction is proper and if the court has no further questions. All right we'll hear from any further questions yeah thank you all right we'll hear from the government we'll give you a couple minutes public thank you very much your honor may it please the court Peter Smith on behalf of the United States this court already rejected appellant's challenge to his extradition and there is no basis for upsetting the court's 2017 decision in this case appellant has a very high burden to meet under the law of the case doctrine as appellants counsel seem to recognize today he has to show extraordinary circumstances one example would be whether this court's opinion in 2017 were clearly erroneous which it is not this court held in 2017 that the extradition order itself was clear and that it clearly allowed appellant to be prosecuted on the U.S. charges without limitation the courts in Belgium have not withdrawn retracted or modified that order of extradition in any way the treaty is unchanged the offenses are unchanged the diplomatic notes sent by the government of Belgium to the United States expressing the view that appellant could be tried on all of the United States charges have not been withdrawn or modified in any way appellant's argument basically hinges on pleadings internal to Belgium which were never directed to the United States and two notes from Belgium prosecutors conveying Belgian court decisions neither can you speak to the exchange that Miss Getzel and Judge Rao had about the nose this principle running against the extraditing state what is the government's United States government's view of extradition and the extent to which any potential mistakes about the extradited ability if that's a word of the individual is something that can be remedied by this court your honor as the government pointed out there are principles of comedy in its brief the principles of comedy would be that this court would not second guess or look behind the extradition decision or the grant of extradition to see whether Belgium violated its laws for example or whether Belgium properly applied its internal its laws well what if what if they what if assume in a hypothetical that the ministry and the courts now come running the Belgian ministry the Belgian courts they've extradited this person with the order that we have and we receive a diplomatic note signed by the minister and the head of the judicial officer that says we were wrong wrong wrong so sorry we don't think this person can be either extradited or that these charges can go forward is that something that how do we account for that or could we account for that I think that would certainly be a harder case than the facts of this case and it one could take the position that there would be no change meaning that once extradited the Belgian government couldn't somehow undo its extradition but in the hypothetical I understand the Belgian executive branch the ministry of justice to be saying you know there was some error there was some infirmity in extradition which I guess would make it a harder case the government hasn't argued that would it make it a non-justiciable case Judge Rouse suggests that at that point there's no remedy if extradition is done and it's over there's there's no redressability I think there is support for that view I don't the government didn't expressly argue that in its pleadings in this case the government seemed to think that appellant would have some sort of recourse under the treaty but he isn't entitled to dismissal of the indictment and he you know it the court's question is a hypothetical it's not it is not this case this what happened in this case is not that the executive branch has somehow tried to undo the extradition well Mr. Smith in the facts of this case if dismissal is not a remedy what's the you know how are his claims redressable you know is there any redressability for Mr. Travelsi I mean one could take a strong position and say that under Casey and those sorts of authority that he doesn't and the government didn't argue that in that way I understand the government didn't argue it but you know we do have a independent obligation to determine our jurisdiction so I guess I had always assumed that the court would under in applying the bilateral treaty which is also the law of the United States the treaty itself that in applying the law the treaty that it would be it would be able to reach the question of whether some acts were excluded but that we didn't brief it that way we didn't argue it that way so I'm just sort of speaking off the top of my head I don't well are you I think that I think that I think to answer Judge Rowell's question the the government if this were just a U.S. prosecution that didn't have anything to do with extradition and the government filed the same indictment and the district court judge said I'm going to strike over acts you know 23 through 26 because I don't believe that they are part of this this the same conspiracy so I'm going to strike those acts from the indictment under 3731 you could appeal that and we'd have jurisdiction over that interlocutory yes I think yes that would be right I think so and that's essentially what the same as what Trabalsi is saying here or the relief that he is asking for I mean you're saying by analogy that if it were a U.S. case right he'd be able to obtain that case that's the way we briefed the this case so far that the any relief you get could be limited to striking those acts but he's he can't get dismissal of the indictment I think that was our position in our briefs but not because it's not a remedy that you're saying because he's not entitled to it under these circumstances not because that's not something the court had doesn't have the power to order I think that's right although I think we also argued that dismissal the indictment wasn't a remedy the court could grant for the harm he was alleging which is a violation of the treaty in this particular way but but I mean the government can take an interlocutory appeal under very limited circumstances but one of them is if evidence is excluded so if if there's a criminal trial and the district court judge says I'm not going to allow introduction of evidence concerning x if it's important enough to the government and they believe that it's going to place their ability to obtain a conviction in jeopardy it can take an interlocutory appeal of that ruling excluding evidence and we have jurisdiction to hear that right you would and I guess where this case differs is that appellants rights here are limited to the bilateral treaty between the United States and Belgium and it's although it's akin to a double jeopardy claim it's not a double jeopardy claim under the U.S. Constitution it's a treaty-based claim and the Belgian government is a separate sovereign so there's no real double jeopardy bar the relief that appellant could obtain is runs solely from the treaty which is so I mean I I agree with Judge Wilkins that um you know an interlocutory appeal here you know we we may well have jurisdiction for that but but the question is whether Mr. has an injury that's cognizable under the treaty as you say the only basis for his claim at this point is his treaty is are his treaty rights and and I'm not sure how article 5 runs against the U.S. government um it may run against the Belgian government as the extraditing state um but I'm not sure how article 5 runs against the U.S. government and I'm not sure um how the U.S. government would have caused his harm under article 5 which he claims is you know being unlawfully extradited by Belgium so perhaps you could speak to that yeah I mean I take the court's point and it's certainly a reasonable position and I understand the court's focus on the granting of extradition on the requested state which is Belgium um but I was simply saying the government didn't make that argument in its briefs and isn't isn't the answer that um to the extent that an extradition occurs pursuant to certain conditions that are noted by the requested state they say we're allowing this extradition but in many cases not in toto right you can't um execute him for example I think was one of the conditions in this very case right so that to the extent then that the receiving state violates that condition I'm wondering whether the person isn't injured and has a cognizable injury as Judge Rao points out under the treaty insofar as the extradition order which was issued under the conditions that the receiving state is violated so if we had for example in this case a very clear extradition order that says you cannot prosecute him for offenses 23 24 through 26 or whatever it is and that everybody was in agreement the minister spelled it out very clearly and the United States proceeded to do so I don't know whether we would say that is not a cognizable injury from the point of the United States for a person trying to get bring a claim in this court they could say under the treaty these are the conditions they're being violated they run to the original uh state however you are a party to that treaty and you agreed upon accepting his extradition not to proceed in a certain way am I right about that yes and the um short answer to your question your honor is that that would be a different kind of claim that would be a specialty claim where the argument would be that um the prosecution somehow extended beyond the grant of extradition specialty is a doctrine that is not subject to interlocutory appeal and this is explained in the government's brief so appellants interlocutory appeal which is this appeal is only is limited to article five of the treaty his um double jeopardy type claim so the in the court's question or hypothetical where something extend where the U.S. government was somehow not complying with the grant of extradition that would be a specialty claim like for example we filed charges and sought appellants execution in the court's example or we did we filed new charges that weren't covered in the extradition order that those would be specialty claims I see but you we would ultimately have jurisdiction if the prosecution occurred and was what convicted or not then he could bring it it's just a matter of interlocutory versus later it's not right that would never be that would be part of his direct exactly he did that would be part of his direct appeal he could say you know hey they charged me they said they were charging me with conspiracy but they also added these five other counts that weren't conspiracy and so that would be part of his direct appeal following his conviction and there are there are lots of cases um adjudicating those types of specialty claims under treaties are you aware of any similar are you aware of any case where someone has successfully brought a prior prosecution or non-beast claim after being extradited to the United States I'm not your honor and the government's brief says expressly that um at least framed narrowly in the way that appellant is raising this claim there we were not able to find any such case I was not able to find any such case either the court has no further questions I would urge the court to affirm the judgment of the district court thank you very much all right I think you were out of time but we'll give you minutes thank you um there is there may be no such case um because normally countries don't prosecute people for the same thing twice so double jeopardy has not really been an issue none of the cases that are referring to speciality claims they're also sort of um entwined with these the exclusion on extradition was specifically grounded in article 5 of the treaty it's a double jeopardy claim the reason that the that the kingdom of Belgium granted his extradition not for everything allowed him to be um extradited here but excluded over acts 23 through 26 are because charging him and convicting him and trying him for those overt acts violate article 5 of the treaty and so that is the right that Mr. Trebalzi is seeking to vindicate in addition I just want to note that I mean this is a domestic criminal prosecution and the right under the treaty is the right not to be tried the double jeopardy right that both parties to bilateral treaty have agreed upon is Mr. Trebalzi's and and Supreme Court case lies clear on that under Rauscher that the right in years to the person who is a beneficiary of the treaty and the treaty is our law so all we are doing is asking the court this court to enforce the grant of extradition and the treaty um and to enforce Mr. Trebalzi's right not to be tried twice for the same thing we um ask the court to at a minimum order that overt acts 23 through 26 be stricken from the indictment thank you we'll take the matter under advice
judges: Wilkins, Rao, Jackson